**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11945

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ALEXANDER ALLI,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00024-CEH-SPF-1

————————————

Before WILLIAM PRYOR, Chief Judge, and ABUDU and TJOFLAT, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide questions about evidentiary rulings and jury instructions and whether sufficient evidence supports a conviction of conspiracy to commit wire fraud. In 2020,

2                    Opinion of the Court                    24-11945

Congress authorized the Small Business Administration to loan emergency funds to small businesses to mitigate losses from the COVID-19 pandemic. Almar Sales and Services, Inc., fraudulently obtained an $80,500 loan through the program. A jury convicted its principal owner, Alexander Alli, of conspiracy to commit wire fraud, 18 U.S.C. § 1349, and two counts of wire fraud, *id*. §§ 2, 1343. Alli argues that the district court erred by declining to apply the rule of completeness, FED. R. EVID. 106, to admit additional excerpts of his interviews with an agent, that there is insufficient evidence to support his conspiracy conviction, and that the district court erred by instructing the jury on *Pinkerton* liability and deliberate ignorance. We affirm.

## I. BACKGROUND

During the COVID-19 pandemic, Congress authorized the Small Business Administration to provide low-interest loans to small businesses under the Economic Injury and Disaster Loan program. *See* Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub L. No. 116-136, § 1110, 134 Stat. 281, 306 (2020). The purpose of the loans was to mitigate pandemic-related losses, and businesses with 500 or fewer employees that were in operation on January 31, 2020, were eligible. *Id*. § 1110(a)(2)(A), (c)(2). The amount a business could borrow depended on its working capital needs, calculated as its gross revenues minus its cost of goods sold from the previous 12 months. United States citizens and green card holders were eligible for loans, although the Administration processed applications from citizens faster. Congress also authorized the Administration to provide grants of up to $10,000 per business

while their loan applications were pending. Pub L. No. 116-136, § 1110(e)(3). A business could receive a grant after self-certifying under penalty of perjury that it was eligible for a loan. *Id.* § 1110(e)(1)–(2).

To implement the loan and grant programs, the Administration created an online application, which required the names and contact information for the business and its owners, its gross revenues and cost of goods sold for the past 12 months, its number of employees, and its date of establishment. Applicants were not required to provide any records to substantiate the information they submitted, but they were required to certify that the information was true.

In April 2020, Almar Sales and Services, Inc., submitted a loan application. The application stated that Almar was established in 2018, engaged in internet sales, and had two employees. It provided a primary business address in Minnesota. It listed Alexander Alli as an 80 percent owner and Maria Sostre as a 20 percent owner, and it stated that both owners were United States citizens. And it stated that Almar had earned $250,000 in gross revenues and accrued $85,000 in cost of goods sold for the previous 12 months. The application did not contain the name of the submitter, although it provided Alli's phone number as the contact number.

The Administration approved Almar for a $2,000 grant and later for an $80,500 loan. On July 23, 2020, Alli electronically signed a closing agreement, promissory note, and security agreement for the loan. He agreed to use loaned funds "solely as working capital

to alleviate economic injury caused by" the pandemic. And four days later, the Administration disbursed the $80,500 loan, less a $100 processing fee, to Alli's personal bank account. Shortly thereafter, Alli wrote two checks for $20,000 each to a Benjamin Marke, both with a memo line of "Truck." Alli made only one payment on the loan for accrued interest, and the Administration later "charged off" the loan as uncollectable.

Many of the representations on Almar's loan application were false. Although the application listed a Minnesota address as its primary business location, Almar was registered in Florida and did not do business in Minnesota. Almar appeared to be inactive because its business bank account had been closed in 2019 with a negative balance and no one had accessed the business's email account after January 26, 2020. Although Almar claimed $250,000 in gross revenues on the application, it had not filed a business tax return for 2018, 2019, or 2020, and Alli's and Sostre's personal tax returns for 2019 claimed losses from the business. And Alli was not a United States citizen.

In 2022, Homeland Security Investigations Special Agent James Pierre interviewed Alli twice about the loan. Alli told Special Agent Pierre that Sostre was his girlfriend and accountant. According to Alli, he told Sostre that he wanted to start a trucking business, and she suggested he fund it through a COVID-19-relief loan. Alli said he agreed and directed Sostre to apply for a loan. He told Special Agent Pierre that he used the loan proceeds to purchase two semi-trucks from a dealership in Daytona, Florida called 206

Trucking. He explained that he had leased the trucks to a company called Brave Freight, but that he was losing money on the venture and contemplating selling the trucks to repay the loan.

Alli also admitted that the loan application contained false representations. He told Special Agent Pierre that Almar was in the business of selling cars, even though the loan application stated that it conducted internet sales. And he stated that Almar's gross revenues for the 12 months before the loan were around $70,000, well below the $250,000 claimed on the application.

Alli denied knowledge of these misrepresentations. According to Alli, he told Sostre he wanted to borrow about $80,000, and she completed the application and decided what information to provide. Alli also denied reviewing the loan documents before signing them.

A grand jury returned a superseding indictment charging Alli with one count of conspiracy to commit wire fraud, *see* 18 U.S.C. § 1349, and two counts of wire fraud, *see id.* §§ 2, 1343. The indictment alleged a conspiracy to submit a "false and fraudulent application and loan agreement," and substantive wire fraud based on the same conduct.

Before trial, the prosecution moved to exclude portions of Alli's interviews with Special Agent Pierre. It explained that it planned to introduce excerpts of the interviews through Special Agent Pierre's trial testimony, but that it was "concerned" that Alli would attempt to introduce "self-serving hearsay and exculpatory statements" from the interviews during his cross-examination of

Special Agent Pierre. It argued that under *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985), and *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999), a defendant cannot introduce exculpatory hearsay through cross-examination of another witness but must instead subject himself to cross examination. Alli responded that "the contents of the entire interview[s]" were admissible under the rule of completeness. *See* FED. R. EVID. 106.

At a hearing on the motion, Alli maintained that the prosecution was attempting to "cherrypick out sections [of the interviews] which [were] favorable to the Government's case and exclude everything else," and that under Rule 106, "the totality of that interview should be allowed to be played because it puts in context all of the things that [Alli] is saying and his explanation to many of the questions that are given to him." The district court responded that, as a general rule, the prosecution may "offer the Defendant's statements under the rules of evidence," *see* FED. R. EVID. 801(d)(2), but the "Defendant cannot, however, offer his out-of-court statements to prove the truth of the matter asserted unless some exception to the hearsay rule applies." The district court explained that although it "underst[ood] the rule of completeness under Rule 106, [it was] not sure that it govern[ed] the circumstances here." But because the prosecution's motion did not specify which statements it sought to exclude, the district court postponed ruling on the motion. It ordered the parties to file annotated copies of the interview transcripts with the lines each side sought to introduce highlighted.

A week later, the parties filed the annotated transcripts. Alli narrowed his request, no longer seeking admission of the entire interview but instead only certain highlighted portions. After reviewing the transcripts, the district court concluded that Alli's requested inclusions were inadmissible hearsay. But the district court identified some statements the prosecution sought to introduce that "required some clarification or explanation." So it ordered the prosecution to introduce additional lines of testimony from immediately before or after those statements.

At trial, Special Agent Pierre was the prosecution's lead witness. His testimony centered around his interviews with Alli, and the prosecution played excerpts containing Alli's inculpatory statements. In one excerpt, Alli stated that he had purchased trucks from 206 Trucking in Florida. But Special Agent Pierre testified that he could not find any trucks registered to Alli or Almar in Florida. He also testified that "there were no trucks purchased by . . . Marke in 2020." And he testified that Sostre and Marke were currently under investigation for money laundering.

Near the end of trial, the prosecution moved to instruct the jury on *Pinkerton* liability. *See Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946) (holding that members of a conspiracy are liable for certain substantive offenses committed by co-conspirators). Over Alli's objection, the district court gave the pattern instruction:

> During a conspiracy, if a conspirator commits a crime
> to advance the conspiracy toward its goals, then in
> some cases a coconspirator may be guilty of the

crime even though the coconspirator did not partici-
pate directly in the crime.

So regarding Counts Two and Three, and Defendant
Alexander Alli, if you have first found him guilty of
the crime of conspiracy as charged in Count One, you
may also find him guilty of the crime charged in
Counts Two and Three even though the Defendant
did not personally participate in the crime. To do so,
you must find beyond a reasonable doubt:

> (1) during the conspiracy a conspirator commit-
> ted the additional crime charged to further the
> conspiracy's purpose;

> (2) the Defendant was a knowing and willful
> member of the conspiracy when the crime was
> committed; and

> (3) it was reasonably foreseeable that a cocon-
> spirator would commit the crime as a conse-
> quence of the conspiracy.

When the prosecution requested a deliberate-ignorance in-
struction, Alli objected on the ground that there was insufficient
evidence that he deliberately avoided learning about the fraud. The
district court overruled the objection and instructed the jury using
a modified version of our pattern instruction:

> If a Defendant's knowledge of a fact is an essential
> part of a crime, it's enough that the Defendant was

aware of a high probability that the fact existed—unless the Defendant actually believed the fact didn't exist.

"Deliberate avoidance of positive knowledge"—which is the equivalent of knowledge—occurs, for example, if a defendant is involved in the submission of false and fraudulent documents but deliberately avoids learning whether the documents were false and fraudulent so he or she can deny knowledge of the false and fraudulent documents.

So you may find that a Defendant knew about the fraud scheme if you determine beyond a reasonable doubt that the Defendant (1) actually knew about the fraud, or (2) had every reason to know but deliberately closed his eyes.

But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew about the crime.

The district court also instructed the jury on the good-faith defense:

"Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent—even if the opinion or belief is mistaken. Similarly, evidence of a mistake

10                         Opinion of the Court                    24-11945

in judgment, an error in management, or carelessness can't establish fraudulent intent.

But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

Alli moved for a judgment of acquittal. *See* FED. R. CRIM. P. 29. The district court denied the motion, and the jury convicted Alli on all counts. The district court sentenced him to 13 months' imprisonment and ordered him to pay $82,500 in restitution.

## II. STANDARDS OF REVIEW

We review preserved evidentiary challenges for abuse of discretion and unpreserved challenges for plain error. *United States v. Carthen*, 906 F.3d 1315, 1320 (11th Cir. 2018). "We review the sufficiency of evidence to support a conviction *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). We review a "decision on whether to give a jury instruction" for abuse of discretion. *United States v. Jeri*, 869 F.3d 1247, 1268 (11th Cir. 2017).

## III. DISCUSSION

We divide this discussion into three parts. First, we explain that the district court did not err by declining to apply the rule of completeness to admit additional excerpts from Alli's interviews.

Second, we explain that sufficient evidence supported Alli's conspiracy conviction. Finally, we explain that the district court did not err by instructing the jury on *Pinkerton* liability and deliberate ignorance.

### A. The District Court Did Not Err by Declining to Admit Additional Interview Excerpts Under Rule 106.

Under Rule 106, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." FED. R. EVID. 106. The rule allows parties to "correct an incomplete and misleading impression" by compelling the introduction of additional material that is "necessary to qualify, explain, or place into context the portion already introduced." *United States v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021) (citation and internal quotation marks omitted). To use a famous illustration, if one accused the Psalmist of blasphemy for writing, "There is no God," the rule of completeness would compel introducing the preceding clause of the verse: "The fool says in his heart, 'There is no God.'" *Psalm* 14:1 (New American Bible, Revised Edition); 7 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2094, at 601 (James H. Chadbourn rev. 1978) (citing *Algernon Sidney's Trial*, 9 How. St. Tr. 818, 829, 868 (K.B. 1683)) (discussing the common law precursor to Rule 106). But Rule 106 "does not automatically make [an] entire document admissible once one portion has been introduced," *United States v. Macrina*, 109 F.4th 1341, 1348 (11th Cir. 2024) (citation and internal quotation marks omitted), and it is not a vehicle for a party "to affirmatively

advance [his] own, alternative theory of the case," *Herman*, 997 F.3d at 264.

Alli argues that he was entitled to introduce excerpts from his interviews with Special Agent Pierre under Rule 106. But because Alli's requested excerpts are either duplicative of or unrelated to the statements the prosecution introduced, they were not "necessary to qualify, explain, or place into context the portion already introduced." *Macrina*, 109 F.4th at 1348 (citation and internal quotation marks omitted).

We begin with the duplicative statements. Alli sought to introduce excerpts in which he claimed that Sostre completed the loan application, that he signed the loan documents without reading them, and that he did not tell Sostre how much to put down for Almar's revenue. He also sought to introduce excerpts in which he alleged Sostre made the decision to list his personal bank account on the application and that he used the loan proceeds to purchase two trucks. But these statements are not "necessary" to correct any misimpression because "the testimony introduced" by the prosecution "already discussed" Alli's same contentions. *See United States v. Langford*, 647 F.3d 1309, 1331 (11th Cir. 2011). The prosecution introduced excerpts in which Alli claimed that he "wasn't . . . the one that filled" out the application, that he "trusted [Sostre] and just signed" the loan documents, that he "didn't tell her to put . . . down" the $250,000 gross revenue figure on the application, and that he gave Sostre his "personal bank account" after she told him he could receive the loan proceeds in "any of [his] bank accounts."

In another excerpt introduced by the prosecution, Alli stated that he "bought [two] trucks" after he "got" the loan.

Other statements Alli sought to introduce were unrelated to those introduced by the prosecution. He requested the district court introduce his statements that he leased the trucks to Brave Freight, lost money on the venture, and was contemplating selling the trucks to repay the loan. But the prosecution did not introduce any statements about what happened to the trucks after Alli purchased them. Alli argues these excerpts are necessary to "provide the full context of [his] purchase of the trucks." But Rule 106 serves to "correct an incomplete and misleading impression," not "to affirmatively advance [a party's] own, alternative theory of the case." *Herman*, 997 F.3d at 264.

Finally, Alli faults the district court for not introducing an excerpt in which he stated that although he purchased the trucks in Florida, he registered them in Tennessee. Yet, Alli did not highlight that excerpt in his filing, and we require that "a party must identify for the district court the specific additional parts of a writing or recording" he seeks to introduce under Rule 106. *Macrina*, 109 F.4th at 1349.

The district court did not err—much less plainly err—because the excerpt falls outside the scope of Rule 106. True, Special Agent Pierre testified that he did not find any trucks registered in Alli's name in Florida. And this testimony came after playing a portion of Alli's interview. But Pierre was testifying about his "investigation" apart from his interviews of Alli. Rule 106 did not apply

because "there was nothing to complete." *United States v. Simmons*, 122 F.4th 1256, 1264 (11th Cir. 2024).

Even if Alli's requested excerpts should have been admitted, "an[y] error had no substantial influence on the outcome." *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005) (citation and internal quotation marks omitted). Alli's statements about his trucking business, if admitted, would provide only additional evidence of Alli's guilt because Alli was permitted to use the loan funds "solely as working capital to alleviate economic injury caused by" the pandemic, not to start a new business. And the jury heard the gist of Alli's other exculpatory statements through the duplicative excerpts the prosecution introduced.

Alli also argues that the "district court abused its discretion *per se*" by applying an old version of Rule 106. In 2023, an amendment to Rule 106 clarified that a party may introduce evidence under that rule "over a hearsay objection." FED. R. EVID. 106 (Dec. 1, 2023). But according to Alli, the district court contravened the amendment by excluding Alli's requested excerpts "solely on the basis of the hearsay rule."

The district court did not abuse its discretion. True, the district court determined that "[m]ost of [Alli's requested excerpts were] going to be excluded . . . [as] hearsay." But it also considered whether those statements should be admitted under Rule 106. Indeed, it ruled that several statements offered by the prosecution "needed to be edited" to provide additional context and ordered the prosecution to introduce additional testimony from before or after

those excerpts. The district court considered and rejected admitting the other excerpts under Rule 106, despite their hearsay character.

We also reject Alli's argument that the 2023 amendment abrogated our decisions in *Willis* and *Cunningham* and that the district court erred by applying those "outdated" precedents. Both decisions are consistent with revised Rule 106. In *Willis*, we held that, absent a hearsay exception, a defendant cannot elicit his own "exculpatory statements [made] at the time of his arrest" during the cross-examination of the arresting officer. 759 F.2d at 1501. We reaffirmed that rule in *Cunningham*. 194 F.3d at 1199. The 2023 amendment clarified only that the hearsay rule does not bar the admission of a statement that satisfies Rule 106. Because the district court ruled that Rule 106 was not satisfied, it did not err by excluding Alli's hearsay under *Cunningham* and *Willis*.

We respectfully disagree with our concurring colleague that Alli could have introduced the exculpatory statements under Federal Rule of Evidence 803(3). That rule allows for the admission of an otherwise-hearsay "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." FED. R. EVID. 803(3). But it does not apply to "a statement of memory or belief to prove the fact remembered or believed." *Id.* In other words, Rule 803(3) allows "statements of a 'then-existing' state of mind, not an earlier one." CHARLES ALLEN WRIGHT & JEFFERY BELLIN, 30B FED. PRAC. & PROC. EVID. § 6834 (2026 ed.). So Alli could not rely on statements he made to law enforcement "after

the fact" to prove his state of mind when he submitted the loan application. *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1216 (11th Cir. 2010).

### B. Sufficient Evidence Supports Alli's Conspiracy Conviction.

To convict a defendant for conspiracy to commit wire fraud, 18 U.S.C. § 1349, the government must prove "(1) a conspiracy to commit wire fraud; (2) knowledge of the conspiracy; and (3) that [the defendant] knowingly and voluntarily joined the conspiracy." *United States v. Feldman*, 931 F.3d 1245, 1257 (11th Cir. 2019) (alteration adopted) (citation and internal quotation marks omitted). A person is guilty of wire fraud, 18 U.S.C. § 1343, if he "(1) intentionally participated in a scheme or artifice to defraud another of money or property, and (2) used or caused the use of [interstate] wires for the purpose of executing the scheme or artifice." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013). "In reviewing the sufficiency of the evidence underlying a conviction, we consider the evidence in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor, and our review inquires only whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Feldman*, 931 F.3d at 1257 (alteration adopted) (citation and internal quotation marks omitted).

Alli argues "the evidence is insufficient to prove that [he] knowingly and voluntarily agreed to participate in a conspiracy to commit wire fraud." He does not dispute that the loan application was materially false. He instead maintains that he "relied on

[Sostre's] expertise in applying for the loan" and did not know he was ineligible for it. He asserts that he did not agree to commit wire fraud, but "[a]t most" agreed for Sostre to "help [him] apply for the . . . loan in her capacity as his tax advisor/accountant."

A reasonable jury could find that the evidence established Alli knowingly participated in a conspiracy to commit wire fraud. Alli acknowledged that he signed the loan documents, which restricted the use of the loan proceeds "solely as working capital to alleviate economic injury caused by" the pandemic. The jury could reasonably infer that Alli, by signing the agreement, was aware of its content or at least deliberately ignorant of it. *See United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993) ("This Court has consistently recognized deliberate ignorance of criminal activity as the equivalent of knowledge." (citation and internal quotation marks omitted)). It also could infer that Alli knew about the fraudulent object of the conspiracy because he profited from it by obtaining a loan he never paid back. Alli responds that he did not profit from the loan because he used the funds for his trucking business. But the fact that Alli may have reinvested the money into his other business does not mean he did not profit from the scheme. And Alli's discussions with Sostre about applying for the loan provide evidence of an agreement, and the fact that Alli and Sostre "were dating" undercuts Alli's contention that he was misled by an arms-length "tax advisor/accountant."

Although Alli told Special Agent Pierre that he was ignorant of the misrepresentations on the loan application, he did not read

the loan documents, and he was unaware of the restrictions on the use of the loaned funds, "'a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt,' particularly when the 'elements to be proved for a conviction include highly subjective elements like the defendant's intent or knowledge.'" *United States v. Shabazz*, 887 F.3d 1204, 1220 (11th Cir. 2018) (alteration adopted) (quoting *United States v. Brown*, 53 F.3d 312, 314, 315 (11th Cir. 1995)). This rule "applies . . . to false exculpatory statements made pre-trial." *United States v. Hughes*, 840 F.3d 1368, 1385 (11th Cir. 2016). A reasonable jury could find that Alli was not telling the truth and "infer that the opposite of what he was said was true." *Shabazz*, 887 F.3d at 1220 (alteration adopted) (citation and internal quotation marks omitted).

Alli also faults the prosecution for not introducing direct evidence "such as text messages or emails" from which "the jury could infer the existence of a conspiracy." But Alli acknowledges that a jury may infer the existence of an agreement from indirect or circumstantial evidence. *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005). "[V]iewing the evidence in the light most favorable to the prosecution," we conclude that a "rational trier of fact could have found . . . beyond a reasonable doubt" the existence of a conspiracy. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*C. The District Court Did Not Err by Instructing the Jury on* Pinkerton *Liability and Deliberate Ignorance.*

Alli challenges the *Pinkerton* and deliberate-ignorance jury instructions. He does not contest the accuracy of either instruction

but instead argues that there was insufficient evidence to support giving them. We disagree.

1. Sufficient Evidence Supported the *Pinkerton* Instruction.

Under the *Pinkerton* doctrine, "each party to a continuing conspiracy may be vicariously liable for" the reasonably foreseeable "substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof." *Shabazz*, 887 F.3d at 1219 (alteration adopted) (citation and internal quotation marks omitted); *Pinkerton*, 328 U.S. at 646–47. Alli contends that the district court erred as to the wire fraud counts by instructing the jury on *Pinkerton* liability.

Alli makes two arguments on appeal. First, Alli argues that "the *Pinkerton* instruction was not supported by a sufficient factual basis because . . . the evidence was insufficient to prove the existence of a conspiracy." We reject that argument because, as explained above, there was sufficient evidence to support Alli's conspiracy conviction. Second, Alli argues that the "*Pinkerton* instruction . . . encouraged the jury to infer the existence of the conspiracy from the substantive wire fraud offenses—the inverse of the purpose of *Pinkerton*—thereby opening the door for the jury to consider the evidence in an improper light." But *Shabazz* "reject[ed]" an identical argument that a *Pinkerton* instruction "prompted the jury to extrapolate backwards and find [the defendant] guilty of the conspiracy charge." 887 F.3d at 1220 (internal quotation marks omitted). Moreover, the jury instruction required the

jury to "first f[i]nd [Alli] guilty of the crime of conspiracy as charged in Count One" before considering his liability under *Pinkerton* for the substantive counts. That instruction negated any risk that the jury would improperly infer the existence of a conspiracy from the substantive offenses, and "[w]e presume that juries follow the instructions given to them." *United States v. Lopez*, 649 F.3d 1222, 1237 (11th Cir. 2011).

### 2. Sufficient Evidence Supported the Deliberate-Ignorance Instruction.

A deliberate-ignorance instruction is appropriate if there is sufficient evidence to support an "inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts." *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991) (citation omitted). A "district court should not instruct the jury on 'deliberate ignorance' when the relevant evidence points only to *actual knowledge*, rather than deliberate avoidance." *Id.* But "if there is evidence in the record to support both actual knowledge and deliberate ignorance, then both instructions may be given." *Jeri*, 869 F.3d at 1268.

There was sufficient evidence that Alli "was aware of facts that should have put [him] on notice of the fraudulent activity, but [that he] deliberately insulated [himself] from positive knowledge." *United States v. Arias*, 431 F.3d 1327, 1335 (11th Cir. 2005). A reasonable jury could infer that Alli would want to know more about the conditions of an $80,500 loan before accepting it. Indeed, Alli told

Special Agent Pierre that he was cautious about taking on debt, which supports an inference that he would have investigated the loan conditions but for his deliberate ignorance. And the jury could reasonably infer that Alli's alleged ignorance of the fraud and reliance on Sostre was contrived. *See United States v. Puche*, 350 F.3d 1137, 1149 (11th Cir. 2003) (holding that "a jury could have found that the failure to inquire" about the source of suspicious funds "amounted to deliberate ignorance").

Any error in giving the instruction was also harmless for two reasons. First, the language of the deliberate-ignorance instruction, along with the good-faith instruction, mitigated the risk that the jury "w[ould] convict on a basis akin to a negligence standard." The deliberate-ignorance instruction stated that "negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew about the crime." And the good-faith instruction explained that "[a]n honestly held opinion or an honestly formed belief cannot be fraudulent intent—even if the opinion or belief is mistaken," and that "evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent." We presume the jury followed these instructions. *Lopez*, 649 F.3d at 1237. Second, "the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge." *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008); *see also United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993) (assuming the jury convicted on actual knowledge grounds if "there was insufficient evidence of deliberate ignorance to prove that theory beyond a rea-

sonable doubt"). A reasonable jury could have disbelieved Alli's exculpatory statements and treated them as substantive evidence of Alli's guilt. *Shabazz*, 887 F.3d at 1220. Alli responds that even if he had read the agreement, he still would not have known of "the false and misleading information submitted in the application" because the agreement contained only "the terms and conditions of the loan." But the "terms and conditions" would have informed him that he could not obtain a loan to fund a new business.

## IV. CONCLUSION

We **AFFIRM** Alli's convictions.

24-11945                TJOFLAT, J., Concurring                1

TJOFLAT, Circuit Judge, concurring:

I write separately to say that Federal Rule of Evidence 106 should have played no role in the prosecution of this case.[1]

## I. INTRODUCTION

The indictment alleged that between April and July 2020, Alexander Alli conspired with "others"[2] to commit, and did commit, wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. He did so by submitting a fraudulent application and loan agreement to the Small Business Administration ("SBA") to obtain an Economic Injury Disaster Loan ("EIDL") of $80,400.

To obtain Alli's conviction on the conspiracy offense, the Government had to prove beyond a reasonable doubt that Alli, conspiring with his friend and tax preparer, Maria Sostre, "knew the unlawful purpose of the plan [to obtain the SBA loan] and willfully

---

[1] Rule 106. Remainder of or Related Statements, states:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part— or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

Fed. R. Evid. 106.

[2] The indictment never identifies who Alli's co-conspirators are. We are left to assume, based on his interview with Agent Pierre, that Maria Sostre was the co-conspirator the Government had in mind.

2                    TJOFLAT, J., Concurring                    24-11945

joined in it."[3] And to obtain Alli's conviction of wire fraud, the Government had to prove that Alli acted with "the intent to defraud" the SBA by participating in a scheme to obtain money or property by using false pretenses, representations, or promises.[4]

Specific intent crimes such as these raise a series of questions about proof. Specifically, how would the Government prove that Alli *knew* of the unlawful purpose of the plan he and Sostre allegedly conjured up? How would the Government show what was in Alli's mind while he and Sostre were discussing the possibility of obtaining a loan for a new trucking business? What about later, when Sostre gave Alli the loan application and instructed him to sign it? And how would the Government prove that Alli's *intent* at those times was to defraud the SBA by submitting a loan application with false or fraudulent representations and then to sign a loan agreement based on false promises?

Would the Government prove these elements of the conspiracy and wire fraud offenses with *direct* evidence? Hardly. If the Government were to prove intent at all, it would do so indirectly with circumstantial evidence. The Government would use what Alli and Sostre said and did while preparing the loan application and thereafter. These bits and pieces of evidence, cobbled together, would presumably yield the inference that Alli knowingly and willfully

---

[3] *See* District Court's jury instruction on conspiracy to commit wire fraud.

[4] *See* District Court's jury instruction on wire fraud.

24-11945                TJOFLAT, J., Concurring                3

conspired to participate, and participated, in a scheme to defraud the SBA.

The Government's circumstantial evidence was contained primarily in the transcripts of two interviews Special Agent Pierre had with Alli.[5] Pierre questioned Alli at length about what crossed his mind while he and Sostre were deciding to apply for the SBA loan and what took place thereafter. Alli's answers were forthright. He appeared to have nothing to hide.

Some of Alli's answers to Pierre's questioning were *inculpatory*. For example, Alli readily admitted that he signed the loan application and agreement and used the loan proceeds to purchase two trucks. From this, a jury could *infer* that Alli intended to defraud the SBA.

At the same time, some of Alli's answers were *exculpatory*. Sostre told Alli about the loan and nothing she said gave Alli reason to suspect, much less believe, that applying for the loan would be illegal. Sostre alone prepared the loan application and instructed Alli to sign it. Alli relied on Sostre's apparent expertise, providing only his social security number and address. From all of this, a jury might make an inference, or have a reasonable doubt, as to whether Alli intended to defraud the SBA.

The law of evidence would treat Alli's inculpatory statements as non-hearsay and therefore admissible. *See* Fed. R. Evid.

---

[5] The SBA loan documents also contained circumstantial evidence.

801(d)(2)(A).[6] By the same token, the law of evidence would consider Alli's exculpatory statements to be non-hearsay *if* they constituted circumstantial evidence of Alli's then-existing state of mind, such as his intent, from the moment he told Sostre that he would like to go into the trucking business and thereafter. *See* Fed. R. Evid. 803(3).[7]

---

[6] Rule 801. Definitions That Apply to This Article; Exclusions From Hearsay, states:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:
>
>> (2) *An Opposing Party's Statement.* The statement is offered against an opposing party and:
>>
>> (A) was made by the party.

Fed. R. Evid. 801(d)(2)(A).

[7] Rule 803. Exceptions to the Rule Against Hearsay, states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> *(3) Then-Existing Mental, Emotional, or Physical Condition.* A statement of the declarant's *then-existing state of mind* (*such as* motive, *intent*, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(3) (emphasis added).

24-11945                TJOFLAT, J., Concurring                5

I assume the Government was aware that the District Court, in the exercise of its discretion, could hold Alli's exculpatory statements admissible because they tended to establish his then-existing state of mind. Regardless of whether the Government was aware of Rule 803, it did not want the jury to hear Alli's exculpatory statements because the jury might blame Sostre, not Alli, for concocting the alleged scheme to defraud the SBA.[8]

---

[8] Here is one example of the exculpatory statements the Government moved the District Court to exclude:

| | |
|---|---|
| ALLI: | Yes. She just told me just sign everything, I just signed, that's all. |
| S.A. PIERRE: | So you did not review the loan document. |
| ALLI: | I'm not going to lie to you, I didn't review nothing. |
| S.A. PIERRE: | Did you provide her your social security number. |
| ALLI: | Yes. |
| S.A. PIERRE: | Did you provide her your address. |
| ALLI: | Yes, I did. |
| S.A. PIERRE: | Did you provide her how much the company makes. |
| ALLI: | No. |
| S.A. PIERRE: | So that's the only thing you did not provide her. |
| ALLI: | No. |
| S.A. PIERRE: | So you tell her just make that up. |

6                    TJOFLAT, J., Concurring                    24-11945

In an attempt to avoid that outcome, the Government moved in limine to exclude Alli's exculpatory statements. As pretrial litigation progressed, the District Court's decision-making was hindered by a lack of information from the parties. Specifically, the District Court ruled on the motion in limine without a clear picture of what Alli's defense would be. The result was a misapplication of the law of evidence and a deep injustice against Alli's case. I highlight several stages of the pre-trial litigation process—the motion in limine, the proposed jury instructions, and the Court's in limine ruling—to illustrate my point.

## II. MOTION IN LIMINE

On January 11, the Government moved in limine to exclude Alli's exculpatory statements as hearsay. The Assistant United States Attorney ("AUSA") explained:

> At trial, the United States anticipates calling . . . Special Agent James Pierre as a witness to testify about, among other information, various admissions and inculpatory statements made by the defendant during two separate recorded consensual interviews. During

---

ALLI:          No, I didn't -- you're not getting my point. I didn't tell her make anything up.

S.A. PIERRE:   So she didn't -- so she didn't say how much the -- she didn't ask you how much the company make for that year.

ALLI:          No.

S.A. PIERRE:   She never did.

24-11945                TJOFLAT, J., Concurring                7

Agent Pierre's testimony, the United States will seek
to admit and publish excerpts of these recorded inter-
views, which have been provided to defense counsel
in discovery. The United States is concerned that the
defense will attempt to introduce through the record-
ings or cross-examination of Agent Pierre defendant's
self-serving hearsay and exculpatory statements—
that is, the other contents of the recordings beyond
the excerpts [of the interviews the United States will
introduce].

The Eleventh Circuit Court of Appeals has made
clear that a defendant cannot elicit the defendant's
own exculpatory hearsay statements through cross-
examination.

The AUSA cited our decisions in *United States v. Willis*, 759
F.2d 1486 (11th Cir. 1985), and *United States v. Cunningham,* 194 F.3d
1186, 1199 (11th Cir. 1999), in support of her argument that Alli's
exculpatory statements were inadmissible under the hearsay rule.
But neither decision held that Alli's exculpatory statements would
not be admissible under Federal Rule of Evidence 803(3). This is
because Alli's statements tended to establish his "then-existing state
of mind []such as . . . intent." Fed. R. Evid. 803(3).[9]

---

[9] Neither *Willis* nor *Cunningham* would preclude the argument that Alli's ex-
culpatory statements were relevant to prove his then-existing state of mind—
that is, his state of mind in applying for the SBA loan and, later, in disposing
of the loan's proceeds. In *Willis,* the hearsay rule properly precluded defense
counsel from eliciting on cross-examination his client's out-of-court statement
that he "believed only mail was aboard the plane" because the statement was

8                    Tjoflat, J., Concurring                    24-11945

As a fallback position, in the event the District Court rejected her hearsay argument, the AUSA turned to Rule 106 and submitted that "under the rule of completeness in Fed. R. Evid. 106," it would not be necessary to admit the exculpatory statements into evidence.

Defense counsel, responding to the Government's motion in limine, ignored the Government's hearsay argument, and contended that the transcripts were "relevant" to Alli's "theory of the case" and "the theory of [his] defense in the case." In his response, defense counsel never explained what Alli's defense was. Instead, he argued that Alli's exculpatory statements should be admitted under Rule 106 in their entirety as a matter of "fairness."

### III. Jury Instructions

On March 1 and 5, respectively, the parties filed proposed jury instructions pursuant to the Court's request. In addition to

---

offered to prove its truth about the client's present belief. 759 F.2d at 1501; *See* Fed. R. Evid. 803(3).

In *Cunningham,* the prosecution made a hearsay objection to defense counsel asking Deputy Balzer on cross-examination about a statement the defendant made during his arrest: "Oh, I thought that was over with. They let Oscar [his brother and codefendant] go." Defense counsel argued that the statement fit the Rule 803(3) "hearsay exception . . . , because it demonstrate[d] [Cunningham's] then-existing state of mind." *Cunningham*, 194 F.3d at 1199. The District Court disagreed and sustained the prosecution's objection. We affirmed, stating: "Cunningham fails to note that Rule 803(3) explicitly excludes 'a statement . . . of belief to prove the fact . . . believed,' which describes Cunningham's statement and his motive for seeking its introduction." *Id.*

24-11945                TJOFLAT, J., Concurring                        9

Eleventh Circuit Pattern Jury Instructions on conspiracy to commit
wire fraud (O54) and wire fraud (O51), defense counsel included a
pattern instruction on the good-faith defense (S17), which reads:

> "Good faith" is a complete defense to a charge that
> requires intent to defraud. A defendant isn't required
> to prove good faith. The Government must prove in-
> tent to defraud beyond a reasonable doubt.
>
> An honestly held opinion or an honestly formed be-
> lief cannot be fraudulent intent—even if the opinion
> or belief is mistaken. Similarly, evidence of a mistake
> in judgement, an error in management, or careless-
> ness can't establish fraudulent intent.
>
> But an honest belief that a business venture would ul-
> timately succeed doesn't constitute good faith if the
> Defendant intended to deceive others by making rep-
> resentations the Defendant knew to be false or fraud-
> ulent.

The Government's proposed instructions on conspiracy to
commit wire fraud, wire fraud, and the good-faith defense were
identical to the instructions defense counsel proposed. The Gov-
ernment also proposed an instruction on "Deliberate Ignorance as
Proof of Knowledge" (S8). Along with that instruction, the Gov-
ernment commented:

> Based on conversations with defense counsel and the
> jury instructions proposed by the defendant, it is an-
> ticipated that the defendant will argue at trial that he
> did not know the unlawful purpose of the wire fraud

conspiracy and that he did not know that the docu-
ments (application and loan agreement) submitted to
the SBA were false and fraudulent.

(citations omitted).

★          ★          ★

In his response to the Government's motion in limine, de-
fense counsel argued that Alli's exculpatory statements were "rele-
vant to" Alli's "theory of [his] defense." And in his proposed in-
structions, he told the Court what Alli's defense was: the good-faith
defense. Through their respective proposed jury instructions, de-
fense counsel and the Government agreed, as Instruction S17
states, that if Alli, relying on Sostre, held "an honestly formed be-
lief" that applying for the SBA loan was above board, then that be-
lief "cannot be fraudulent intent." Indeed, not even Alli's "careless-
ness" in not reading the loan application could "establish fraudu-
lent intent."

The Government did not object to defense counsel's argu-
ment to the jury that Alli *did not know* the unlawful purpose of the
wire fraud conspiracy and that he *did not know* that the application
and loan agreement submitted to the SBA were false and fraudu-
lent.

But how could defense counsel argue to the jury that Alli did
not know he was a member of a conspiracy to commit wire fraud
or that the documents submitted to the SBA were false and fraud-
ulent if defense counsel was precluded from bringing to the jury's

attention the exculpatory statements Alli had made in response to Special Agent Pierre's questioning?

## IV. RULING ON MOTION IN LIMINE

On March 8, after reviewing the transcripts of Special Agent Pierre's interviews with Alli, the District Court held a status conference and announced its ruling on the Government's motion in limine. The Court implicitly placed limits on what defense counsel could argue to the jury by announcing that "[m]ost of [Alli's exculpatory statements] are going to be excluded because [they are] hearsay." In the Court's view, the statements were hearsay because Alli's counsel sought to introduce them to prove their truth, not because they were relevant to Alli's intent to defraud.

The Court memorialized its ruling in a March 11 order, issued on the eve of trial. It began by explaining the parties' respective positions:

> The Government seeks to exclude from trial evidence of Defendant's exculpatory statements from two interviews with Government agents. As context, the Government seeks to introduce, through a federal law enforcement agent, various admissions and *inculpatory* statements that Defendant made during these two separate recorded consensual interviews. The Government indicated that its motion was filed out of concern that the defense would attempt to introduce through recordings or cross-examination Defendant's own self-serving hearsay and exculpatory statements from the remainder of the interview.

12                    TJOFLAT, J., Concurring                    24-11945

> Defendant responds that the contents of the entire in-
> terview are relevant to the allegations against him and
> his defense. Therefore, he argues that under Fed. R.
> Evid. 106, the rest of the interview should be intro-
> duced as well because it explains his actions and the
> involvement of an uncharged co-conspirator.

(citations omitted).

Following these explanations, the District Court granted the Government's motion in limine to the extent that Defendant's statements (highlighted in orange to indicate that the defense counsel wanted them included), would be excluded as inadmissible hearsay. As to several other portions of the transcript, the Court indicated that certain questions from the interview should also be included for the sake of clarity, instead of beginning an excerpt with an answer. Issues as to the anticipatory objections, highlighted in red in the sealed transcript, would be resolved at trial.

The statements "highlighted orange" included, as inadmissible hearsay, the statements appearing *supra*, in note 8. The "antici-pated objections" never materialized for resolution at trial.

★          ★          ★

The District Court had apparently not read the parties' proposed jury instructions when it ruled on the Government's motion in limine. If it had read them, the Court would have realized that Alli's defense was the good-faith defense. Consequently, the Court did not consider whether Alli's exculpatory statements were probative of that defense—that is, the Court did not consider whether

Alli's exculpatory statements had the purpose not to prove the truth of their contents but, rather, to prove Alli's "then-existing state of mind," when he submitted the SBA loan application as Sostre instructed. Fed. R. Evid. 803(3).

Both the AUSA and defense counsel knew that the Court was ruling on the motion in limine without the benefit of reviewing the proposed jury instructions. Let us consider what each counsel's responsibilities were as officers of the Court under these circumstances. It is not necessary to catalogue the rules of ethics and canons of conduct that govern the responsibilities of members of the bar when appearing before a court. Nor is it necessary to add to that catalogue the AUSA's responsibility in representing the United States. Or defense counsel's responsibility to provide his client with the effective assistance of counsel mandated by the Sixth Amendment. As officers of the court, the AUSA and the defense counsel were required to inform the Court that the evidentiary landscape of the case had changed, as their proposed jury instructions indicated.

As it turned out, though, the case was tried and submitted to the jury in accordance with the evidentiary rulings the District Court made from the bench on March 8 and memorialized on March 11. The jury returned verdicts against Alli on all charges. On

14                 TJOFLAT, J., Concurring                 24-11945

appeal, Alli's briefs are silent on his good-faith defense and Rule 803(3).[10]

## V. CONCLUSION

I fully concur in the Court's judgment with the exception of its treatment of the Rule 106 issue. Rule 106 should not have come into play. Alli's exculpatory statements, like his inculpatory statements, were plainly admissible under Rule 803(3) as relevant to Alli's "then-existing state of mind," his knowing participation in a conspiracy to commit wire fraud, and his intent to defraud the SBA.

---

[10] The Government's brief mentions the good-faith defense twice in connection with the District Court's jury instructions. First, it says:

> Because the court decided to give the deliberate-ignorance instruction, the court also found it appropriate to give an instruction on good faith. The court instructed the jury that "'[g]ood faith' is a complete defense to a charge that requires intent to defraud" and "[a]n honestly held opinion or an honestly formed belief," even if mistaken, "cannot be fraudulent intent."

Appellee's Brief at 47 (citations omitted). Later, the brief states:

> The jury was entitled to disbelieve Alli's statements about his lack of knowledge and consider them as substantive evidence of his guilt. The jury was also instructed that negligence was not enough to sustain a conviction and that good faith was a complete defense, which further ensured that the jury understood the government's burden of proof on the intent requirement.

Appellee's Brief at 61 (citations omitted).

24-11945                 TJOFLAT, J., Concurring                 15

The District Court should have recognized that, given the time and effort it devoted to the Government's motion in limine and defense counsel's response.

The AUSA created the Rule 106 argument as an irrelevant fallback argument to be advanced if the District Court rejected her principal argument—that defense counsel wanted to introduce Alli's exculpatory statements for the truth of their contents. Defense counsel took the bait, hook, line and sinker. If counsel had focused on the two cases the AUSA cited in support of her hearsay argument, *Willis* and *Cunningham,* he would have discovered Rule 803(3)'s application.

The AUSA was justifiably concerned with the possibility that Alli's exculpatory statements coupled with the Government's decision not to indict Sostre might have prompted the jury to acquit Alli. But that possibility never came to pass. The lawyers' failures as officers of the court precluded the jury from deliberating over the possibility of an acquittal.

I agree with the Court's treatment of the *Pinkerton* and deliberate ignorance jury instruction issues and its disposition of the sufficiency of the evidence of conspiracy issue.